**PANNONIA FARMS, INC., Plaintiff,**

v.

**RE/MAX INTERNATIONAL, INC., et al., Defendants.**

**No. Civ. 01–1697(RJL).**

United States District Court, District of Columbia.

March 21, 2005.

See also 2005 WL 3262902.

Bernard C. Dietz, Washington, DC, for Plaintiff.

Elizabeth B. Sandza, Leboeuf, Lamb, Greene & Macrae, L.L.P., Jon Lellenberg, Randolph D. Moss, Wilmer Cutler Pickering LLP, Thomas P. Olson, Wilmer, Cutler & Pickering Hale & Dorr, John M. Collins, Washington, DC, John R. Posthumus, Greenberg Traurig, LLP, Denver, CO, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

LEON, District Judge.

[# 7, # 8, # 24, # 26, # 27]

Before the Court are Defendant Re/Max International, Inc.'s ("Re/Max") and Jon Lellenberg's motions to dismiss, supplemental motions to dismiss, and motion for attorneys' fees. Pannonia Farms, the plaintiff, allegedly holds the exclusive rights to nine of the Sherlock Holmes stories written by Sir Arthur Conan Doyle, which still enjoy copyright protection. Compl. ¶¶ 4, 8. Not unexpectedly, the ownership of those rights is determined by a lengthy chain of title, during which the rights have changed hands many times. *Id.* ¶¶ 10–14. In its complaint seeking re- lief from violations of the copyright and trademark laws, Pannonia Farms based its exclusive rights in the Sir Arthur Conan Doyle works on a transfer made to it by Star Container Entertainment ("Star Container") in 1986. Compl. ¶¶ 4, 14. The preliminary, but overarching, issue in this case is whether Pannonia Farms has a sufficient ownership interest in Sir Arthur Conan Doyle's works to have standing to sue for intellectual property violations. Defendants argue that a recent decision,[1] by the United States District Court for the Southern District of New York, holding that Pannonia Farms lacks standing to sue for violations of intellectual property rights, collaterally estops the plaintiff from bringing the action in this case. The Court agrees, and there being no basic unfairness to the plaintiff in applying that holding here, GRANTS the defendants' supplemental motions to dismiss.

### *ANALYSIS*

Under Federal Rule of Civil Procedure 12(b)(6), a district court should dismiss a complaint for failure to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts consistent with the complaint's allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C.Cir.1997). All well-pleaded allegations are presumed to be true. *Warren v. D.C.,* 353 F.3d 36, 39 (D.C.Cir.2004).

Under the doctrine of collateral estoppel, however, it is elementary that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in

---

1. *Pannonia Farms, Inc. v. USA Cable,* No. 03–7841, 2004 WL 1276842 (S.D.N.Y. June 8, 2004) (*"Pannonia I"*). The same court de- nied the plaintiff's motion for reconsideration in *Pannonia Farms, Inc. v. USA Cable,* No. 03–7841, 2004 WL 1794504 (S.D.N.Y. Aug. 10, 2004) (*"Pannonia II"*).

subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

■ Our Circuit Court has established a three-part test to determine whether a prior judgment is preclusive:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C.Cir.1992) (internal citations omitted). For the following reasons, the Court finds that this test is satisfied and collateral estoppel applies.

■ Applying the first prong of the *Yamaha* test, the Court readily concludes that the issue before this Court, whether Pannonia Farms has standing to sue for violations of its intellectual property rights in the nine remaining Sherlock Holmes stories that still have copyright protection, was previously contested by the plaintiff and submitted for judgment in a federal district court in New York. That court determined, in *Pannonia I*, and affirmed in *Pannonia II*, that Pannonia Farms did *not* have standing to bring a suit against USA Cable because Pannonia Farms was bound by a 1990 Settlement Agreement between its president,[2] Andrea Reynolds,

Andre Milos, Ms. Reynold's father, and Sheldon Reynolds, which provided that after the 1985 conveyance from Lady Duncan to Star Container "no enforceable assignments by any of the foregoing names mentioned in this paragraph [including Andrea Reynolds] was made thereafter." *Pannonia I*, 2004 WL 1276842, *2–3. The New York federal court considered the parties' arguments and rejected Pannonia Farms's contentions that: (1) it acquired ownership rights to Sir Arthur Conan Doyle's works in a 1986 transfer of rights from Star Container to Pannonia Farms; and (2) it was not a party to the Settlement. *Id.* at *5–6. Indeed, the court specifically held that Andrea Reynold's assent to the settlement agreement implicated Pannonia Farms, even though it was not a signatory to the agreement. *Id.* at *6. Moreover, Judge Buchwald concluded that because the Settlement Agreement "plainly extinguished" the 1986 assignment to Pannonia Farms, the corporation lacked standing because it did not own the copyrights, trademarks, and related rights. *Id.* Thus, the standing issue in this case is identical to the issue already contested, submitted, and decided by the New York federal court. Accordingly, the first element of the *Yamaha* test is satisfied.

The satisfaction of the second requirement is equally clear. The issue of standing was "actually and necessarily" determined by a court of competent jurisdiction in the Southern District of New York. In *Pannonia I*, the court examined the 1990 Settlement Agreement thoroughly and found that Pannonia Farms lacked standing because the parties included the quali-

---

**2.** Although Andrea Reynolds (aka Andrea Plunkett) signed the agreement in her individual capacity, the New York federal court found that because she was President of Pannonia Farms at the time of the agreement, Pannonia Farms also assented to the terms of the settlement agreement. *Pannonia I*, 2004

WL 1276842, at *6. The court held that bringing the action against USA Cable, "a stranger to the Settlement, . . . without joinder of the parties to the Settlement, is not the forum for Pannonia to avoid the Settlement's consequences." *Id.*

fying language, "no *enforceable* assignment," in the agreement, which meant that either at least one party knew of the transfer from Star Container to Pannonia Farms or that "the parties contemplated the possibility that a conveyance about which they were unaware may have occurred," both of which indicated that any transfers after 1985 were unenforceable. *Id.* at *5. Pannonia Farms argues that the New York federal court "did not address the trademark issues relying on its finding that Pannonia Farms ... was not a proper party plaintiff." Opp. to Lellenberg Supp. Mot. to Dismiss at 2. In *Pannonia I*, however, the court ruled "as a matter of law" that Pannonia Farms does not "own[ ] the copyrights, *trademarks* and related rights in the works of Sir Doyle." *Pannonia I*, 2004 WL 1276842, at *6 n. 15 (emphasis added). This Court finds that the Southern District of New York federal court thoroughly investigated the effect of the 1990 Settlement Agreement on Pannonia Farms's ownership interests in *Pannonia I*, and reconsidered the issue in *Pannonia II*. Therefore, a court of competent jurisdiction did actually and necessarily determine the standing issue, thus satisfying the second prong of the *Yamaha* test.

Finally, the third prong of the *Yamaha* test is satisfied because precluding Pannonia from bringing this suit is fair. This case is one in a series of cases in which Pannonia Farms and its president have repeatedly attempted to recover for violations of intellectual property rights. First, in *Plunket v. Doyle*, No. 99–11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001), Andrea Plunket sued the heirs of the Sir Arthur Conan Doyle Estate for copyright infringement and unfair competition and sought a declaratory judgment as to the rights in question. *Id.* at *1. That Court dismissed the case, with leave to file an amended complaint, because Plunket failed to join those parties who may have been adversely affected by the Court's ruling on the chain of title. *Id.* at *7. In 2003, Pannonia Farms filed another lawsuit in the Southern District of New York claiming that a cable company violated intellectual property rights for televising a movie, which featured the Sherlock Holmes and Dr. Watson characters. *Pannonia I*, 2004 WL 1276842, at *1. Finding that Pannonia Farms did not have standing to sue, that court found "it was wholly unreasonable" for the plaintiff to expect the court to revise a fourteen-year-old state court order. *Pannonia I*, 2004 WL 1276842, at *7. As is obvious, Pannonia Farms has had every opportunity to pursue and litigate this very issue in court and has lost every time. The decisions in *Pannonia I* and *Pannonia II* therefore preclude Pannonia Farms from relitigating the standing issue in this action and the defendants' motions to dismiss based on collateral estoppel are GRANTED.

## ATTORNEYS' FEES & RULE 11 SANCTIONS

Re/Max seeks attorneys' fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117, as well as Rule 11 Sanctions. For the following reasons, the Court GRANTS IN PART AND DENIES IN PART the motion for attorneys' fees.

The decision whether to award attorneys' fees in an action under the Copyright Act is within the sound discretion of the Court. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523–24, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Section 505 provides that;

In any civil action under [Title 17—Copyrights], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title,

the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. In determining whether such an award is appropriate, the Court may consider the following factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023; *see also Harrison Music Corp. v. Tesfaye*, 293 F.Supp.2d 80, 84 (D.D.C. 2003). After the New York federal court's decision in *Pannonia I*, Re/Max sent a letter to counsel for Pannonia Farms asking it to withdraw or dismiss the complaint because "its [sic] collaterally estopped from claiming ownership of [the rights in the works of Sir Arthur Conan Doyle]." Re/Max Supp. Mot. to Dismiss Ex. A. Pannonia Farms stated that it was willing to amend its complaint to remove the copyright claims, but insisted that the trademark claims remained. *Id.* Ex. B. But, the New York federal court held that Pannonia did not "own[ ] the copyrights, trademarks and related rights in the works of Sir Doyle." *Pannonia I*, 2004 WL 1276842, at *6. Therefore, it was objectively unreasonable for Pannonia Farms to continue to pursue any of the intellectual property claims after the New York federal court found that it did not have any ownership interests. Accordingly, the Court awards attorneys' fees to Re/Max for its preparation and litigation of the Supplemental Motion to Dismiss Based on Collateral Estoppel.

■ Re/Max also seeks attorneys fees under the Lanham Act, which provides:

*[w]hen a violation* of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, *shall have been established* in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover the costs of this action.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a)(3) (emphasis added). Since this Court's decision to dismiss this case is based on plaintiff's lack of standing, a violation under the Lanham Act has not been established and attorneys fees are inappropriate.

■ Finally, Rule 11 provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R.Civ.P. 11(c). Sanctions may be initiated by a party's motion or on the Court's own initiative. *Id.* Re/Max includes its motion for Rule 11 sanctions in its supplemental motion to dismiss and motion for attorneys' fees. Re/Max, therefore, did not comply with the requirement in Rule 11 that a motion for Rule 11 sanctions be "made separately from other motions or requests." *Id.* 11(c)(1)(A). And, while the plaintiff's refusal to withdraw its complaint may constitute sanctionable conduct, the Court declines to impose Rule 11 sanctions *sua sponte*.

### ORDER

For the reasons set forth above, it is this 21st day of March, 2005 hereby

**ORDERED** that the Defendant Jon Lellenberg's Supplemental Motion to Dismiss Based on Collateral Estoppel [# 24] is **GRANTED**, and it is further

**ORDERED** that the Defendant Re/Max International, Inc.'s Supplemental Motion to Dismiss Based on Collateral Estoppel and Motion for Attorneys' Fees [# 26, # 27] is **GRANTED IN PART AND DENIED IN PART**, and it is further

**ORDERED** that Defendant Jon Lellenberg's Motion to Dismiss [# 7] is **DENIED** as moot, and it is further

**ORDERED** that Defendant Re/Max International, Inc.'s Motion to Dismiss [# 8] is **DENIED** as moot.

*SO ORDERED.*